# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN A. PINO, | : |
| Plaintiff | : CIVIL ACTION NO. 3:15-1172 |
| v. | : (MANNION, D.J.) |
| | (CARLSON, M.J.) |
| MICHAEL CAREY, et al., | : |
| Defendants | : |

## **MEMORANDUM**

Pending before the court is the June 16, 2017 report of Judge Carlson, (Doc. 69), which recommends that defendant Carey's motion for summary judgment, (Doc. 41), be granted based on qualified immunity in this civil rights action raising a Fourth Amendment excessive force claim. All of the other defendants in this case, except for defendant Carey, have previously been dismissed. After being granted several motions for extensions of time to object to Judge Carlson's report, plaintiff filed his objections on October 31, 2017, with attached exhibits. (Doc. 79). The court has reviewed Judge Carlson's report, plaintiff's objections to it as well as defendant Carey's response to the objections, and it will **ADOPT IN ITS ENTIRETY** the report and **GRANT** defendant Carey's motion for summary judgment. Plaintiff's objections to Judge Carlson's report will be **OVERRULED**.

## I. BACKGROUND[1]

Briefly, by way of background, on June 16, 2015, the *pro se* plaintiff, John A. Pino, an inmate at SCI-Houtzdale, PA, filed the instant civil rights action pursuant to 42 U.S.C. §1983 alleging violations of his constitutional rights by the defendants in relation to events leading to his arrest, conviction and current term of imprisonment. (Doc. 1). The plaintiff is now proceeding on his amended complaint which he filed on July 9, 2015. (Doc. 9). Defendant Michael Carey, Chief of Police of Saint Clair Borough, Pennsylvania, filed his answer to plaintiff's amended complaint with affirmative defenses on March 4, 2016. (Doc. 25).

Discovery then ensued, including the deposition of plaintiff.

On October 13, 2016, Carey, now the sole remaining defendant, filed a motion for summary judgment. (Doc. 41). The motion was briefed by the parties and a statement of material facts was filed, as well as exhibits.

On June 16, 2017, Judge Carlson issued his report and recommended that Carey's motion for summary judgment be granted since he found that Carey was entitled to qualified immunity. (Doc. 69).

On July 3, 2017, plaintiff filed a motion for an extension of time to file objections to Judge Carlson's reports which the court granted and gave

---

[1]Since the full background of this case is stated in the court's April 28, 2017 Memorandum, (Doc. 66), it shall not be fully repeated herein. Additionally, the court will limits its discussion to information relevant to plaintiff's excessive force claim against remaining defendant Carey.

plaintiff until July 31, 2017 to file his objections. (Doc. 70, Doc. 71).

On August 1, 2017, plaintiff filed a motion for a second extension of time to object to Judge Carlson's report and/or a motion to hold the case in abeyance "due to [plaintiff's] mental incompetence to file a meaningful appeal", i.e., objections. (Doc. 72). In his motion, plaintiff requested the court to place his case in abeyance "until his mental [condition] stabilizes and the arrival of his corrective lenses." He also requested that if his stay is denied, that he be given another extension of time to file his objections.

On September 5, 2017, the court issued a memorandum and order denying plaintiff's request to hold in abeyance and stay this case. The court, however, granted plaintiff's second request for an extension of time until September 18, 2017 within which to file his objections to Judge Carlson's Doc. 69 report. (Doc. 75, Doc. 76).

On September 20, 2017, plaintiff filed a third motion for an extension of time to object to Judge Carlson's report, (Doc. 77), and the court granted it on September 29, 2017, giving plaintiff until November 1, 2017 to file his objections. (Doc. 78).

On October 31, 2017, plaintiff filed his objections to Judge Carlson's report, (Doc. 79), with attached exhibits, including excerpts of notes of testimony from his criminal trial, his unsworn Declaration, as well as a copy of a medical record and documents regarding a grievance he filed with the prison in June 2016. (Doc. 79-1). On November 7, 2017, Carey filed a

3

response to plaintiff's objections. (Doc. 80).

On November 8, 2017, the court issued an Order directing Carey to file the video recordings of the events leading to plaintiff's arrest on August 26, 2013, obtained from the dashboard cameras of police vehicles. (Doc. 81). On November 16, 2017, the court received the video recordings from Carey.

## II.    STANDARD OF REVIEW[2]

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review de novo those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is de novo, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp. 2d 465, 469

---

[2]Since Judge Carlson states the appropriate standard with respect to a summary judgment motion, the court will not repeat it herein.

4

(M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining that judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31."[A] Report and Recommendation does not have force of law unless and until the district court enters an order accepting or [not accepting] it." Garceran v. Morris County Prosecutors Office, 2015 WL 858106, *1 (D.N.J. Feb. 27, 2015) (citing United Steelworkers of Am. v. N.J. Zinc Co., Inc., 828 F.2d 1001, 1005 (3d Cir. 1987)).

### III. DISCUSSION

The doctrine of qualified immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right [ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609(1999); Saucier v. Katz, 533 U.S. 194, 201–02 (2001). Qualified immunity provides not only a defense to liability, but "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). To determine whether Carey is entitled to qualified immunity, the court must analyze two factors: 1) whether the plaintiff has shown facts that make out a constitutional rights violation, and if so, 2) whether those rights

5

were "clearly established" at the time of the incident. Pearson v. Callahan, 555 U.S. 223 (2009); *see also* Perez v. Borough of Berwick, 507 Fed.Appx. 186, 192 (3d Cir. 2012) ("To determine whether the individual officers are entitled to qualified immunity, the District Court [is] required to consider whether, under the factual scenario of this case, the officers were reasonable to believe that their actions did not violate the [plaintiff's] clearly established rights."); Taylor v. Barkes, —— U.S. ——, 135 S.Ct. 2042, 2044, (2015) ("Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.") (citation omitted).

Since Judge Carlson details the undisputed facts of this case in his report, (Doc. 69 at 6-12), which are adopted, the court will not fully repeat them herein. Briefly, "Pino brought this suit against three law enforcement officers whom he claims violated his rights under the Fourth Amendment ... when they allegedly used excessive force during the course of his arrest after he led officers on a high-speed chase following his suspected theft from a local Walmart" on August 26, 2013. Chief Carey was at the scene when plaintiff was stopped by troopers after the chase in which plaintiff narrowly missed hitting people with his vehicle and seriously injuring an officer (Hand). At plaintiff's criminal trial, testimony as well as evidence, including video recordings from police vehicle dashboard cameras, revealed that when plaintiff's Ford Explorer was finally forced off the road by Trooper Allar and

it was stopped in a ditch, he had his hand on the steering wheel and on the gearshift as he was revving his engine trying to get out of the ditch. Trooper Allar deployed his taser at plaintiff and the other officers directed him to put his vehicle in park, turn off the engine, and exit his vehicle. However, plaintiff refused to comply with their orders and continued to rev his engine which caused his tires to spin in the ditch.

Chief Carey, (Doc. 79-1 at 4), then testified:

> My fear at that point was for the safety of all officers involved, that if [plaintiff] were to break free from that gully, that [the officers] could be seriously injured or killed, especially [PSP] Trooper Allar from where his location was to the suspect vehicle as well as myself and officer Hand, who's to my right. I'm not sure where other police officers were located behind me, but what I could see was Trooper Allar in front of me. I knew that Trooper Allar had exited his vehicle. I knew that Officer Hand was to my right. And I felt that that sort of force was needed to stop this activity.

Carey stated that based on plaintiff's actions it appeared that he was going to accelerate in his vehicle out of the place where officers had stopped him, accelerate forward, and "get free from where he was." (Id.). Thus, Carey fired two rounds from his Glock pistol at plaintiff. Carey did not know where the first round struck but he stated that the second round "struck [plaintiff] in the right shoulder through the passenger window that was down." (Id. at 3-4).

Despite being hit by one round, plaintiff continued to refuse the officers' commands to stop his vehicle and exit, which required Officer Hand to deploy his taser to stun plaintiff once again. Officers were then finally able to remove

7

plaintiff from his vehicle and emergency medical personnel began treating him.

At his criminal trial, plaintiff was convicted of several offenses by a jury and he was subsequently sentenced to a prison term of 9 to 24 years.

The court has reviewed Judge Carlson's report and plaintiff's objections to it, as well as the video recordings from the dashboard cameras of police vehicles, and finds that Carey is entitled to qualified immunity regarding plaintiff's excessive force claim based on Judge Carlson's reasoning and the Supreme Court cases he cites, particularly, Mullinex v. Luna, — U.S.—, 136 S.Ct. 305 (2015), and Brosseau v. Haugen, 543 U.S. 194, 195 (2004), as well as the recent Third Circuit case of Thompson v. Howard, 679 Fed.Appx. 177 (3d Cir. Feb. 17, 2017), since a reasonable officer would believe that using his weapon and shooting plaintiff in his shoulder under the undisputed circumstances at the time of plaintiff's arrest did not violate plaintiff's clearly established Fourth Amendment right, i.e., the right not to be subjected to excessive force when being arrested. *See also* Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, 2093 (2012) ("To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right.").

In his objections, (Doc. 79), despite the fact that plaintiff admitted in his deposition that he could not remember the events surrounding his arrest, plaintiff discusses why he believes that his Explorer was stuck, he was not

8

moving, and could not "break free" in an attempt to show that Carey's use of his firearm was not justified and constituted excessive force. He attached six pages of his criminal trial transcript to try and support his contention. (Doc. 79-1 at 2-8). Plaintiff ignores many undisputed facts leading up to his arrest which are extensively detailed in Judge Carlson's report and instead focuses on a few portions of his trial transcripts he claims show that he was stuck. Plaintiff also included two pages of Carey's testimony which in fact support the conclusion that Carey is entitled to qualified immunity since a reasonable officer would have believed that he and the other officers were in serious danger based on plaintiff's actions.

Additionally, the standard for qualified immunity is whether a reasonable officer in Carey's position would have believed he was violating a clearly established constitutional right by using his firearm against a suspect who was forcibly stopped after a dangerous high-speed chase, who had almost hit several people with his vehicle, including police officers, who had already freed himself once after being stopped by police, and who was still continually revving his engine and trying to extricate his vehicle from a ditch with officers close to his vehicle, even after tasers were deployed on him. *See* Thompson, 679 Fed.Appx. at 181 ("To decide if a use of force was 'objectively reasonable[,]' we consider the 'severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officer or others, and whether he [was] actively resisting arrest or attempting to

evade arrest by flight.'" (citations omitted).

Moreover, the court has reviewed the video recordings of the events leading to plaintiff's arrest on August 26, 2013, obtained from the dashboard cameras of police vehicles. While to angle does not allow the one to see the weapon discharge nor contain sound to enable one to hear what was said, the court finds that these recordings do adequately show a reasonable police officer in Carey's position, at the time of the shooting, would have concluded that plaintiff was again in the process of trying to free his Explorer from the ditch and that if he was successful he would be able to drive out of the ditch and place all of the officers surrounding his vehicle in imminent danger of serious injury or death by being struck by his fleeing vehicle. Given the substantial risk of serious injury posed to the officers, and given plaintiff's continual attempts to free his vehicle from the ditch in blatant disregard of the commands of the officers to exit his vehicle, it would not have been clear to a reasonable police officer that discharging his firearm, under all of the circumstances of this case, would violate plaintiff's clearly established Fourth Amendment rights.

Thus, under the totality of the circumstances and based on Supreme Court precedent, Carey is entitled to summary judgment since the court does not find that it was objectively unreasonable for Chief Carey to believe that using lethal force on plaintiff was required. *See Thompson, supra; see also* Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000) ("Summary judgment is

appropriate if no reasonable juror could conclude that [the plaintiff's] clearly established rights were violated.").

Finally, plaintiff states in his objections that at the time of his arrest "[he] was not in his right state of mind" and, that he "was mentally uncapable (sic) of understanding any procedures [since] he was mentally incompetent." (Doc. 79 at 3). He submitted one page of a medical record dated October 29, 2007 from a VA Medical Center indicating that he had in the past diagnoses of bipolar disorder and post traumatic stress disorder ("PTSD"). (Doc. 79-1 at 14). However, plaintiff does not submit any evidence to show that either Carey or any of the other officers were aware of his alleged mental conditions at the relevant time. Further, there is no showing by plaintiff that any of the officers were aware that his "mental medication" did not agree with him on the day in question and that "voices [were] telling him to go home." Indeed, none of the officers could have possibly known what plaintiff was thinking in his head. Nor do the plaintiff's unsworn Declaration and his prison grievance documents dated in 2016, attached to his objections, (Doc. 79-1, at 13- 20), (Doc. 79-2), have any bearing on the issue of whether Carey is entitled to qualified immunity.

As such, the court finds that Carey is shielded from liability based on qualified immunity with respect to plaintiff's excessive force claim and that he is entitled to summary judgment on this basis.

## IV. CONCLUSION

The court has reviewed the recommended reasons for granting the summary judgment motion of defendant Chief Carey,(Doc. 41), presented by Judge Carlson in his report, (Doc. 69). Because the court agrees with the sound reasoning that led Judge Carlson to the conclusions in his report and finds no clear error in the record, the court will **ADOPT** the report in its entirety and, **GRANT** defendant Carey's summary judgment motion. The court will also **OVERRULE** plaintiff's objections to Judge Carlson's report, (Doc. 79). An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: December 8, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-1172-05.wpd